[File No. Cr. 140.]

STATE OF NORTH DAKOTA EX REL. A. C. JORDAN, Petitioner, v. FRED ANSTROM, Sheriff of Burleigh County, North Dakota, Respondent.

(270 N. W. 895.)

Opinion filed January 11, 1937.

Hanley & Hanley, for petitioner.

P. O. Sathre, Attorney General, for respondent.

BURKE, J.  The petitioner, A. C. Jordon, petitions this court for a writ of habeas corpus claiming that he is unlawfully imprisoned in the county jail of Burleigh county by Fred Anstrom, Sheriff of Burleigh county, by virtue of a commitment issued by Edward S. Allen, police magistrate and ex officio justice of the peace in and for said county of Burleigh; that on January 2, 1937, a criminal complaint was filed in the said justice of the peace court wherein the said A. C. Jordon was charged with the crime of operating a motor vehicle without a driver's license for the current year 1937, in violation of chapter 175, Session Laws 1935, and after a preliminary hearing before said justice of the peace the said petitioner was bound over to the district court of Burleigh county for trial.

By stipulation it was agreed that said Jordon, after the passage of said law in 1935, procured a license in accordance with said law for 1935, which license has not been suspended or revoked.

It is the contention of the respondent that under chapter 175 motor vehicle operators and chauffeurs are required to take out an annual license and it is the contention of the petitioner that the law does not require an annual license and that a license once procured is good as long as it is not suspended or revoked, and it is conceded that the license procured by the petitioner in 1935 has not been suspended or revoked.

The sole question involved is, does chapter 175 of the Session Laws of 1935 require an annual license.

The bill was first introduced as Senate Bill No. 264.  Section 16 of the bill, as it was introduced, reads as follows: "Every operator's and chauffeur's license issued hereunder shall expire (December thirty-first) each year and shall be renewed annually upon application and payment of the fees required by law, . . ."

It was clearly the intent of the author of the bill to provide for an annual license, and it passed the Senate, as shown by the Senate Journal, with just a few minor changes.  In the House, as shown in the House Journal on page 1810, it was amended as follows, namely: "Amend the title by adding at the end thereof 'Appropriation.' Strike out everything after the enacting clause and add in place thereof the following: . . ."  Then follows an entirely new act with no provision for an annual license.

On its return to the Senate, as shown by the Senate Journal page 1664, the Senate refused to concur in the amendments made in the House and Senate members of a conference committee were appointed. The conference committee, as shown by the Senate Journal pages 1700, 1701, and 1702, reported the amended bill to the Senate with only a few minor changes and on motion of the author of the bill the report was adopted. The author of the bill then moved that the rules be suspended and that Senate Bill No. 264, as amended, be considered properly re-engrossed and placed upon second reading and final passage. The motion prevailed and on roll call all the Senate members present voted "aye." As shown on page 2054 of the House Journal, Senate Bill No. 264, was read the second time. "The question being on the final passage of the Bill, as amended, the roll was called and there were ayes, 83; nays, 1; . . . So the bill passed and the title was agreed to, and the emergency clause was declared carried."

Section 2 of the act provides: "no person 16 years of age or over shall on and after this measure shall be in force and effect, operate any motor vehicle upon the public highways of this state unless such person shall have made application for and secured a driver's license from the State Highway Commissioner for which he shall pay to the Commissioner the sum of 25 cents, payable at the time of making such application."

Nowhere in the act is there any provision for an annual license and since the original bill contained a very clear, direct provision for an annual license it is clear that the legislature, in amending the bill by adopting and passing an entirely different act without a provision for an annual license, intended that the license issued under the act as amended and finally passed should continue in force, unless suspended or revoked for cause or changed by additional, future legislation.

Clearly the petitioner is illegally deprived of his liberty and the writ will issue.

CHRISTIANSON, Ch. J., and NUESSLE, MORRIS and BURR, JJ., concur.